## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JEREMIAH MOORE, Individually and For Others Similarly Situated | Case No. _____ |
| v. | Jury Trial Demanded |
| GD TOP NOTCH CLEANING SERVICE, INC. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Jeremiah Moore (Moore) brings this collective action lawsuit to recover unpaid overtime wages and other damages from GD Top Notch Cleaning Service, Inc. (GD Top Notch) under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA).

2.     Moore works for GD Top Notch as a Field Office Supervising Coordinator in Michigan.

3.     Moore and the Straight Time Workers (as defined below) are GD Top Notch's hourly employees.

4.     Moore and the Straight Time Workers regularly work more than 40 hours a week.

5.     But GD Top Notch does not pay Moore and the Straight Time Workers overtime wages.

6.    Instead of paying overtime wages as required by the FLSA, GD Top Notch uniformly pays Moore and the Straight Time Workers the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (or "straight time for overtime").

7.    GD Top Notch never paid Moore or the Straight Time Workers on a "salary basis."

8.    GD Top Notch pays Moore and the Straight Time Workers on an hourly basis.

9.    GD Top Notch's uniform straight time for overtime pay scheme, which deprives Moore and the Straight Time Workers of overtime wages for the overtime hours these employees work, violates the FLSA.

## JURISDICTION & VENUE

10.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

11.    This Court has general personal jurisdiction over GD Top Notch because GD Top Notch is a domestic corporation that maintains its headquarters in Redford, Michigan.

12.    Venue is proper because GD Top Notch maintains its headquarters in Redford, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13.     Moore has worked for GD Top Notch as a Field Office Supervising Coordinator in Michigan since approximately February 2020.

14.     Throughout his employment, GD Top Notch paid Moore the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek ("straight time for overtime").

15.     Moore's written consent is attached as **Exhibit 1**.

16.     Moore brings this action on behalf of himself and all other similarly situated workers who GD Top Notch paid under its straight time for overtime pay scheme.

17.     GD Top Notch uniformly paid each of these workers the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek, in violation of the FLSA.

18.     The Putative Collective of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, GD Top Notch who were paid the same hourly rate for all hours worked (or "straight time for overtime") at any time during the past 3 years ("Straight Time Workers" or "Putative Collective").**

19.     GD Top Notch is a domestic corporation that maintains its headquarters in Redford, Michigan.

20.     GD Top Notch can be served with process by serving its registered agent:

**Gay Glickoff, 31724 Fairfax, Livonia, Michigan 48152**, or wherever she may be found.

### COVERAGE UNDER THE FLSA

21.     At all relevant times, GD Top Notch was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22.     At all relevant times, GD Top Notch was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23.     At all relevant times, GD Top Notch was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, walkie-talkies, hardhats, and personal protective equipment – that have been moved in or produced for commerce.

24.     At all relevant times, GD Top Notch has had an annual gross volume of sales made or business done of not less than $500,000 each year.

25.     At all relevant times, Moore and the Straight Time Workers were GD Top Notch's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

26.     At all relevant times, Moore and the Straight Time Workers were engaged in commerce or in the production of goods for commerce.

27.     GD Top Notch uniformly paid (and continues to pay) Moore and the Straight Time Workers the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek.

28.     As a result of GD Top Notch's uniform straight time for overtime pay policy, Moore and the Straight Time Workers do not receive overtime pay at rates not less than 1.5 times these employees' regular rates of pay as required by the FLSA.

29.     GD Top Notch applied its illegal straight time for overtime pay scheme to Moore and the Straight Time Workers regardless of any alleged individualized factors, such as specific job title, client assignment, or geographic location.

30.     By paying Moore and the Straight Time Workers straight time for overtime, GD Top Notch violated (and continues to violate) the FLSA's requirement that it pay employees overtime compensation at rates not less than 1.5 times their regular rates of pay for hours worked in excess of 40 in a workweek.

31.     GD Top Notch's uniform compensation scheme of paying Moore and the Straight Time Workers straight time for overtime violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

32.     GD Top Notch provides professional new-construction clean up services to commercial properties.[1]

33.     To meet its business objectives, GD Top Notch hires workers, including Moore and the Straight Time Workers, who it assigns to provide construction clean up services to its clients.

34.     GD Top Notch does not hire these workers, including Moore and the Straight Time Workers, on a project-by-project basis.

35.     Rather, GD Top Notch hires and treats these workers, including Moore and the Straight Time Workers, just like regular employees.

36.     In fact, GD Top Notch controls all meaningful aspects of Moore's and the Straight Time Workers' jobs and employment conditions.

37.     GD Top Notch controls Moore's and the Straight Time Workers' rates and methods of pay.

38.     GD Top Notch controls Moore's and the Straight Time Workers' schedules and assignments.

39.     GD Top Notch controls Moore's and the Straight Time Workers' work.

40.     GD Top Notch requires Moore and the Straight Time Workers to follow GD Top Notch's policies, procedures, protocols, and specifications.

---

[1] https://www.gdtopnotch.com/about (last visited June 13, 2023).

6

41.     Moore's and the Straight Time Workers' work must strictly adhere to the quality standards put in place by GD Top Notch.

42.     Moore and the Straight Time Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

43.     Indeed, the daily and weekly activities of Moore and the Straight Time Workers are routine and largely governed by standardized plans, procedures, and checklists created by GD Top Notch.

44.     Virtually every job function is predetermined by GD Top Notch, including the tools, equipment, and materials used; what and where to clean; what to wear; the schedule of work; and related work duties.

45.     GD Top Notch prohibits Moore and the Straight Time Workers from varying their job duties outside of these predetermined parameters and requires these employees to follow GD Top Notch's strict policies, procedures, protocols, and directives.

46.     GD Top Notch prohibits Moore and Straight Time Workers from straying from GD Top Notch's strict procedures, plans, protocols, and directives, as well as from well-established industry standards and applicable safety regulations.

47.     To the extent Moore and the Straight Time Workers make "decisions," such decisions do not require the exercise of independent discretion and judgment.

48.     Instead, Moore and the Straight Time Workers apply well-established techniques and procedures and use established standards and checklists to evaluate any issues.

49.     Moore and the Straight Time Workers do not set the techniques and procedures utilized to perform their job duties, and these employees do not set quality standards.

50.     Moore and the Straight Time Workers are not allowed to deviate from the techniques and procedures utilized to perform their job duties or from any quality standards.

51.     Rather, GD Top Notch requires Moore and the Straight Time Workers to perform their job duties in strict accordance with GD Top Notch's quality control standards.

52.     Without the cleaning work Moore and the Straight Time Workers perform, GD Top Notch would not be able to complete its business objectives of providing construction clean up services to its clients.

53.     Moore and the Straight Time Workers rely on GD Top Notch for work and compensation.

54.     Moore and the Straight Time Workers cannot subcontract out the work GD Top Notch assigns them.

55.     Moore and the Straight Time Workers do not substantially invest in the tools necessary to complete the overall job they are assigned.

8

56.     Rather, GD Top Notch incurs the large-scale business and operating expenses like marketing, payroll, equipment, tools, and materials.

57.     Moore and the Straight Time Workers do not market their services while employed by GD Top Notch.

58.     GD Top Notch sets Moore's and the Straight Time Workers' work schedule, which prohibits them from working other jobs for other companies while working for GD Top Notch.

59.     At all relevant times, GD Top Notch has maintained control, oversight, and direction of Moore and the Straight Time Workers, including, but not limited to, hiring, firing, disciplining, quality and performance standards, hours worked, and other employment practices.

60.     In sum, based on the economic realities of the employment setting in which Moore and the Straight Time Workers work for GD Top Notch, they are clearly GD Top Notch's employees within the meaning of the FLSA.

61.     GD Top Notch uniformly pays these workers, including Moore and the Straight Time Workers, on an hourly basis.

62.     Indeed, GD Top Notch pays Moore and the Straight Time Workers the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek ("straight time for overtime"), in violation of the FLSA.

63.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

64. For example, Moore has worked for GD Top Notch as a Field Office Supervising Coordinator in Michigan since approximately February 2020.

65. Throughout his employment, GD Top Notch paid Moore under its illegal straight time for overtime pay scheme.

66. Specifically, GD Top Notch pays Moore the same hourly rate (approximately $14-$18/hour depending on the client GD Top Notch assigns him) for all hours worked, including those worked in excess of 40 hours in a workweek.

67. GD Top Notch uniformly pays Moore and the Straight Time Workers under its straight time for overtime pay scheme that deprives these employees of premium overtime wages when they work more than 40 hours in a workweek in violation of the FLSA.

68. Moore and the Straight Time Workers are GD Top Notch's hourly employees.

69. Indeed, GD Top Notch requires Moore and the Straight Time Workers to record their hours worked.

70. Moore and the Straight Time Workers are not paid on a "salary basis."

71. Moore and the Straight Time Workers are not paid a guaranteed salary.

72. If Moore and the Straight Time Workers work fewer than 40 hours in a week, GD Top Notch only pays them for the hours they actually worked.

73. Thus, Moore and the Straight Time Workers are non-exempt employees entitled to overtime wages for the hours they work in excess of 40 hours in a workweek.

10

74.     Moore worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

75.     Likewise, each Straight Time Worker worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

76.     Indeed, Moore and the Straight Time Workers typically work 12+ hours a day, for 5 to 6 days a week.

77.     Thus, Moore and the Straight Time Workers regularly work more than 40 hours in a typical workweek.

78.     Moore and the Straight Time Workers work in accordance with the schedule set by GD Top Notch (and/or its clients).

79.     When Moore and the Straight Time Workers work more than 40 hours in a workweek, GD Top Notch does not pay them overtime wages at 1.5 times their regular rates of pay in violation of the FLSA.

80.     GD Top Notch only pays Moore and the Straight Time Workers straight time for overtime.

81.     GD Top Notch's uniform straight time for overtime pay scheme violates the FLSA by depriving non-exempt employees, including Moore and the Straight Time Workers, of premium overtime wages when they work more than 40 hours in a workweek.

### COLLECTIVE ACTION ALLEGATIONS

82.     Moore realleges and incorporates all other paragraphs by reference.

11

83.     Moore brings his claims as a collective action on behalf of himself and the Straight Time Workers under Section 216(b) of the FLSA.

84.     The Straight Time Workers are uniformly victimized by GD Top Notch's straight time for overtime pay scheme, which is in willful violation of the FLSA.

85.     Other Straight Time Workers worked with Moore and indicated they were paid in the same manner, performed similar work, and were subject to GD Top Notch's same straight time for overtime pay scheme.

86.     Based on his experiences with GD Top Notch, Moore is aware GD Top Notch's illegal practices were imposed on the Straight Time Workers.

87.     The Straight Time Workers are similarly situated in all relevant respects.

88.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

89.     Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent collective treatment.

90.     Rather, the Putative Collective is held together by GD Top Notch's uniform straight time for overtime pay scheme that systematically deprived Moore and the Straight Time Workers of premium overtime wages when they worked more than 40 hours in a workweek.

91.     The Straight Time Workers are similarly denied premium overtime wages when they work more than 40 hours in a workweek in violation of the FLSA.

92.    The back wages owed to Moore and the Straight Time Workers will be calculated using the same records and using the same formula.

93.    Moore's experiences are therefore typical of the experiences of the Straight Time Workers.

94.    Moore has no interest contrary to, or in conflict with, the Straight Time Workers that would prevent collective treatment.

95.    Like each Straight Time Worker, Moore has an interest in obtaining the unpaid wages owed under federal law.

96.    A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

97.    Absent a collective action, many Straight Time Workers will not obtain redress for their injuries, and GD Top Notch will reap the unjust benefits of violating the FLSA.

98.    Further, even if some of the Straight Time Workers could afford individual litigation against GD Top Notch, it would be unduly burdensome to the judicial system.

99.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Straight Time Workers, as well as provide judicial consistency.

100.    The questions of law and fact that are common to each Straight Time Worker predominate over any questions affecting solely the individual members.

13

101.    Among the common questions of law and fact are:

    a.    Whether GD Top Notch applied its straight time for overtime pay scheme uniformly to the Straight Time Workers across the country;

    b.    Whether GD Top Notch's straight time for overtime pay scheme deprived Moore and the Straight Time Workers of premium overtime wages they are owed under the FLSA;

    c.    Whether GD Top Notch's violations of the FLSA resulted from a continuing course of conduct;

    d.    Whether GD Top Notch's decision not to pay Moore and the Straight Time Workers overtime wages was made in good faith; and

    e.    Whether GD Top Notch's violations of the FLSA were willful.

102.    Moore and the Straight Time Workers sustained damages arising out of GD Top Notch's illegal and uniform employment policies.

103.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to GD Top Notch's records, and there is no detraction from the common nucleus of liability facts.

104.    Therefore, the issue of damages does not preclude collective treatment.

105.    Moore knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

106.    GD Top Notch is liable under the FLSA for failing to pay overtime wages to Moore and the Straight Time Workers.

14

107.    Consistent with GD Top Notch's illegal straight time for overtime pay scheme, Moore and the Straight Time Workers were not paid premium overtime wages when they worked more than 40 hours in a workweek.

108.    As part of its regular business practices, GD Top Notch intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Moore and the Straight Time Workers.

109.    GD Top Notch's illegal straight time for overtime pay scheme deprived Moore and the Straight Time Workers of the premium overtime wages they are owed under federal law.

110.    There are many similarly situated Straight Time Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

111.    This notice should be sent to the Straight Time Workers pursuant to 29 U.S.C. § 216(b).

112.    The Straight Time Workers are known to GD Top Notch, are readily identifiable, and can be located through GD Top Notch's records.

### GD TOP NOTCH'S FLSA VIOLATIONS WERE WILLFUL OR DONE IN RECKLESS DISREGARD FOR THE FLSA

113.    Moore realleges and incorporates all other paragraphs by reference.

114.    GD Top Notch knew it was subject to the FLSA, including its overtime provisions.

115.    GD Top Notch knew the FLSA required it to pay non-exempt employees, including Moore and the Straight Time Workers, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

116.    GD Top Notch knew it controlled Moore's and the Straight Time Workers' rates and methods of pay.

117.    GD Top Notch knew it controlled all meaningful aspects of Moore's and the Straight Time Workers' work.

118.    GD Top Notch knew it controlled Moore's and the Straight Time Workers' assignments and schedules.

119.    GD Top Notch knew Moore and the Straight Time Workers relied on it for work and compensation.

120.    GD Top Notch knew Moore's and the Straight Time Workers' work was integral to GD Top Notch's construction cleaning business.

121.    GD Top Notch knew its relative investments in the necessary facilities, tools, and equipment significantly outweighed any investments Moore and the Straight Time Workers incurred.

122.    GD Top Notch knew Moore and the Straight Time Workers were not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

123. GD Top Notch knew it did not hire Moore and the Straight Time Workers on a project-by-project basis.

124. Thus, GD Top Notch knew, or should have known, that, as a matter of economic reality, Moore and the Straight Time Workers were its employees under the FLSA.

125. GD Top Notch knew Moore and the Straight Time Workers were its hourly employees.

126. GD Top Notch knew it paid Moore and the Straight Time Workers on an hourly basis.

127. GD Top Notch knew it paid Moore and the Straight Time Workers the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek.

128. GD Top Notch knew it did not pay Moore and the Straight Time Workers on a "salary basis."

129. GD Top Notch knew it did not pay Moore and the Straight Time Workers any minimum guaranteed salary.

130. GD Top Notch knew its straight time for overtime pay scheme did not satisfy the salary basis test necessary to classify Moore and the Straight Time Workers as exempt from the FLSA's overtime provisions.

131.    Thus, GD Top Notch knew, or should have known, Moore and the Straight Time Workers were its non-exempt employees and, therefore, entitled to premium overtime wages when they worked more than 40 hours in a workweek.

132.    GD Top Notch knew Moore and the Straight Time Workers worked more than 40 hours in a week because it regularly expected and required these workers to do so.

133.    Indeed, GD Top Notch required Moore and the Straight Time Workers to record their hours worked and report the same to GD Top Notch.

134.    GD Top Notch knew it was required to pay Moore and the Straight Time Workers overtime wages at 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

135.    Nonetheless, GD Top Notch failed to pay Moore and the Straight Time Workers premium overtime wages for the hours these employees worked in excess of 40 hours in a workweek.

136.    GD Top Notch's failure to pay Moore and the Straight Time Workers overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

137.    GD Top Notch knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived Moore and the Straight Time Workers of premium overtime wages for the hours they worked in excess of 40 hours in a workweek in violation of the FLSA.

18

138.    GD Top Notch knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

139.    Moore realleges and incorporates all other paragraphs by reference.

140.    Moore brings his FLSA claims as a collective action on behalf of himself and the Straight Time Workers pursuant to 29 U.S.C. § 216(b).

141.    GD Top Notch violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees (Moore and the Straight Time Workers) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times the regular rates of pay for their work in excess of 40 hours per workweek.

142.    Moore and the Straight Time Workers have been harmed as a direct and proximate result of GD Top Notch's unlawful conduct because they have been deprived of wages owed for work that they performed and from which GD Top Notch derived a direct and substantial benefit.

143.    GD Top Notch's failure to pay Moore and the Straight Time Workers overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

144.    GD Top Notch knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Moore and the Straight Time Workers overtime compensation at the proper premium rate the FLSA requires.

145.    Accordingly, Moore and the Straight Time Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

146.    Moore demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Moore individually, and on behalf of the Straight Time Workers, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Straight Time Workers allowing them to join this action by filing a written notice of consent;

b.    An Order pursuant to Section 16(b) of the FLSA finding GD Top Notch liable for unpaid overtime wages due to Moore and the Straight Time Workers, plus liquidated damages in amount equal to their unpaid compensation;

    c.      A Judgment against GD Top Notch awarding Moore and the Straight Time Workers all their unpaid overtime compensation, liquidated damages, and any other penalties available under the FLSA;

    d.      An Order awarding attorney's fees, costs, and expenses;

    e.      Pre- and post-judgment interest at the highest applicable rates; and

    f.      Such other and further relief as may be necessary and appropriate.

Dated: June 14, 2023.          Respectfully submitted,

By: */s/ Jennifer McManus*
**Jennifer L. McManus (P65976)**
Local Counsel for Plaintiff
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

Michael A. Josephson
TX Bar No. 24014780
Andrew W. Dunlap
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025

Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**